25CA1526 Ford v ICAO 01-15-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1526
Industrial Claim Appeals Office of the State of Colorado
DD No. 12645-2025

Erik Ford,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Hawthorne*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

Erik Ford, Pro Se

No Appearance for Respondent

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this unemployment benefits case, claimant, Erik Ford, seeks review of a final order of the Industrial Claim Appeals Office (Panel). The Panel affirmed the hearing officer's decision disqualifying Ford from receiving benefits based on his job separation from CraneWorks, Inc. We affirm.

## I.    Background

¶ 2     Ford worked as a Branch Services Manager for CraneWorks from January 2022 to September 2024. He originally took this position with hopes that he would be able to move up the ranks, but over time it became clear that there was no opportunity for growth. Ford therefore started looking for another position and was offered a Branch Service Manager position for a competitor at higher pay. Ford gave notice to CraneWorks and started his new position.

¶ 3     A deputy determined that Ford was disqualified from receiving benefits because he was responsible for his separation from employment when he quit CraneWorks to accept other employment. As far as we can discern from the record, Ford's new employer eliminated his position sometime in March 2025 and he immediately applied for unemployment benefits. But because

Ford's "base period" included only time he worked for CraneWorks, the deputy determined that Ford's eligibility for unemployment benefits was limited to the circumstances under which he separated from that employer. *See* § 8-70-103(2), C.R.S. 2025 (defining "base period" as "the first four of the last five completed calendar quarters immediately preceding the first day of the individual's benefit year"). The record before us does not include specific dates from which the base period and the eligibility for unemployment benefits can be determined. And that is not an issue Ford raised.

¶ 4    Ford appealed and a hearing was held. The hearing officer concluded that Ford was disqualified from receiving unemployment benefits under section 8-73-108(5)(e)(V), C.R.S. 2025, because he quit to accept other employment. Ford appealed the hearing officer's decision to the Panel, which affirmed upon review.

II.    Standard of Review and Applicable Law

¶ 5    As relevant in this case, we may set aside the Panel's decision only if the findings of fact do not support the decision or if the decision is erroneous as a matter of law. § 8-74-107(6), C.R.S. 2025. We may not disturb the hearing officer's factual findings if they are "supported by substantial evidence or reasonable

2

inferences drawn from that evidence." *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 10; *see also* § 8-74-107(4) (facts supported by substantial evidence shall be conclusive). Substantial evidence is "that which is probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding." *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).

¶ 6     A claimant's entitlement to employment benefits depends on the reason for the separation from employment, which is a question of fact for the hearing officer. *Eckhart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989); *see also* § 8-73-108(1) (unemployment benefits are aimed at persons unemployed through no fault of their own). A claimant is disqualified from receiving benefits when the claimant "quit[s] to accept other employment" (except for certain employment in the construction industry). § 8-73-108(5)(e)(V).

<h3 style="text-align:center">III.   Analysis</h3>

¶ 7     It is undisputed that Ford quit working for CraneWorks to accept a job with a competitor. Ford testified accordingly before the

hearing officer. Ford neither argued nor presented evidence that the construction work exception applies. *See* § 8-73-108(4)(f)(I).

¶ 8    In his appeal to the Panel, Ford asserted that the hearing officer erred when she made a factual finding that he left CraneWorks for a better paying job. Ford argued he left for "professional growth" rather than better pay. The Panel addressed Ford's argument, explaining that Ford said he left for "professional development" but also that the new position paid more annually and had the potential for quarterly bonuses — which his employment at CraneWorks did not. The Panel found, and we agree, that the hearing officer's inferences from this evidence that Ford sought a job with higher pay was not in error. Accordingly, the hearing officer's factual findings as to the reason for Ford's separation from CraneWorks, are supported by substantial evidence. *See* § 8-74-107.

¶ 9    More importantly, an employee is disqualified for benefits under section 8-73-108(5)(e)(V), if they quit their job to accept other employment — quitting for higher pay is not required. Thus, Ford was not eligible for benefits whether he left CraneWorks for "professional growth," for higher pay, or for both.

¶ 10    On appeal, Ford also asserts that had he waited six more days to file for unemployment benefits, he would have received it from his new employer, rather than CraneWorks. He asserts that he should not be disqualified from receiving benefits because he has worked for thirty consecutive years, does not know how unemployment benefits work, and did not know the details about how the timing of benefits worked. He further asserts that the unemployment office should have told him to wait a week to file for benefits to ensure that he received them.

¶ 11    Even assuming that Ford would have been entitled to benefits had he waited a week to file a claim, under the circumstances, it appears that the hearing officer had no choice but to find Ford disqualified from receiving benefits because of his voluntary separation from CraneWorks. *See* § 8-73-108(5)(e)(V). Further, on this record and with the issues Ford raised, we cannot conclude that the Panel's order upholding the hearing officer's decision was legally erroneous or unsupported by the factual findings. *See Yotes,* ¶ 10. Consequently, we cannot set aside the Panel's order on review.

¶ 12　　As we understand Ford's argument, he claims that had he waited to file for unemployment benefits, his "base period" would have encompassed his employment with the new employer who laid him off and, as such, he would not have been disqualified from receiving benefits. As mentioned above, that issue was not before the hearing officer. *See* § 8-74-104(2), C.R.S. 2025 (the Panel may only consider evidence in the record previously submitted in the case). Accordingly, the Panel could not consider any of Ford's factual assertions related to timing, and neither can this court. *See Voisnet v. Indus. Claim Appeals Off.*, 757 P.2d 171, 173 (Colo. App. 1988); *see also Velo v. Emp. Sols. Pers.*, 988 P.2d 1139, 1143 (Colo. App. 1998) (declining to address "arguments [that] were not raised and preserved for our review in the administrative proceedings").

¶ 13　　Nor are we persuaded to reach a different result by Ford's argument that the unemployment office should have told him to wait to file his claim. Generally, information given by the unemployment office about an application for benefits "d[oes] not provide a basis for awarding benefits contrary to the statutory provisions." *Boeheim v. Indus. Claim Appeals Off.*, 23 P.3d 1247, 1249 (Colo. App. 2001).

¶ 14    We acknowledge that many claimants may not realize how the timing of their claim filing can impact their eligibility to receive benefits and lead to harsh results.  Nevertheless, there is a strong presumption that the public has knowledge of the law, and having requested benefits, claimants are presumed to know the contents of the unemployment statutes.  *See id.*; *Paul v. Indus. Comm'n*, 632 P.2d 638, 639 (Colo. App. 1981).

## IV.   Disposition

¶ 15    We affirm the order.

CHIEF JUDGE ROMÁN and JUDGE HAWTHORNE concur.